[No. D002512. Fourth Dist., Div. One. Nov. 13, 1985.]

In re JENNIFER P., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
BONNIE P., Objector and Appellant.

COUNSEL

Tom Adler for Objector and Appellant.

Edwin L. Miller, Jr., District Attorney, Peter C. Lehman and D. Michael Ebert, Deputy District Attorneys, for Petitioner and Respondent.

Michele Sacks Lowenstein and Leahy & Lowenstein for Minor.

OPINION

**WIENER, J.**—Bonnie P., mother of the juvenile Jennifer P., appeals from an order of the juvenile court declaring Jennifer a dependent child under Welfare and Institutions Code section 300, subdivision (d).[1] We conclude

---

[1] All statutory references are to the Welfare and Institutions Code. In discussing subdivision (d) of section 300, we omit repetition of the word "subdivision" in each reference.

there was insufficient evidence presented at the hearing to invoke the jurisdiction of the juvenile court and reverse the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Bonnie and Dennis P., the adoptive parents of Jennifer, were separated in 1981 and divorced in 1982. Bonnie had primary physical custody of Jennifer, but Dennis retained and exercised reasonable visitation rights.

Shortly after the separation, Bonnie became concerned about some of Jennifer's behavior and consulted a child psychiatrist, Dr. Michael Jaffe. The therapy continued over the next several years. In early 1984, Bonnie reported to Dr. Jaffe Jennifer's preoccupation with certain sexual matters. By May 1984 Jaffe began to suspect the possibility of molestation, and referred Jennifer to Dr. Louise Greene, a psychologist. When Dr. Greene concurred in Dr. Jaffe's suspicions, Bonnie immediately informed the county department of social services (Department), which in turn informed the San Diego Police Department.

On May 30 and June 1, 1984, Jennifer underwent an examination and interview at Children's Hospital. The examination confirmed the molestation. In the interview, Jennifer stated that her father had engaged in both oral copulation and intercourse with her on several occasions while she visited him.

Bonnie initially requested the help of the juvenile court and the Department because she wanted to make sure that Dennis had no contact, either direct or indirect, with Jennifer. Bonnie cooperated in the criminal prosecution of Dennis and sought a modification of Jennifer's custody status in the domestic court which would preclude any contact with Dennis. Bonnie later objected, however, to being subject to the continuing jurisdiction and supervision of the juvenile court.

The facts with respect to Bonnie's parenting abilities are not in dispute. Dr. Jaffe stated that Bonnie "dealt with this tragedy superbly." He "strongly support[ed]" Bonnie's position that continued juvenile court intervention was unnecessary. Noni Mationg, a senior social worker with the Department, agreed with Jaffe's conclusions about Bonnie. She commented that Bonnie "has demonstrated superior care and cooperation throughout this investigation. It is believed that the mother possesses optimal parenting skills and will do all possible in order to insure protection of her daughter." Notwithstanding this evaluation, the Department continued to pursue the dependency petition because of its belief that juvenile court orders might be necessary to protect Jennifer before final resolution of the criminal action

against Dennis or the custody modification action in the domestic court. The Department at no time proposed that Jennifer be removed from Bonnie's custody.

At the jurisdictional hearing in the juvenile court, the referee sustained the Department's petition, finding that Jennifer had been sexually abused and that "said minor's mother has been unable to protect said minor." When pressed by Bonnie's counsel for evidence to support the finding of the "inability to protect," the deputy district attorney suggested the following findings which were adopted by the referee: "[T]hat the mother had no knowledge of the sexual abuse; that the father, [Mr. P.], no longer resided with the mother; there was a temporary restraining order in effect as of the date of the trial not allowing the father to come into the home; that visitation had been terminated as of May 1984, pursuant to the temporary restraining order; that there was nothing presented in this trial, no evidence presented in this trial that the father had expressed a willingness not to return to the home; . . . that regular visitations occurred up until the time of the temporary restraining order on May 19, '84; that the temporary restraining order was due to expire at the next hearing; that the pending criminal matter had not yet come to a final conclusion; and that the domestic custody matter had not yet come to a final conclusion . . . ."

Bonnie's petition for rehearing was denied by the juvenile court and this appeal followed.

## DISCUSSION

The facts of this case are quite similar to the facts in *In re Nicole B.* (1979) 93 Cal.App.3d 874 [155 Cal.Rptr. 916] where the appellate court sustained the juvenile court's assumption of jurisdiction under section 300(d).[2] ■■■ ■■■ Bonnie nonetheless contends that *Nicole B.* is distinguishable and that the evidence on this record is insufficient to sup-

---

[2]Section 300 provides in relevant part as follows: "Any person under the age of 18 years who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge such person to be a dependent child of the court:

". . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Whose home is an unfit place for him by reason of neglect, cruelty, depravity, or physical abuse of either of his parents, or of his guardian or other person in whose custody or care he is."

port the trial court's finding Bonnie's home is presently unfit for Jennifer.[3] Bonnie's argument requires a careful examination of *Nicole B.*

*Nicole B.* involved a single instance of physical abuse of a child by the mother's live-in friend. The mother was not present during the incident and knew nothing about it. At the time of the jurisdictional hearing, the mother's friend had been taken to a Veterans Administration Hospital and no longer resided with the family. (93 Cal.App.3d at p. 877.) Like Bonnie P., Nicole's mother disputed the juvenile court's finding that her home was unfit based on the lack of any evidence implicating her in the wrongdoing. But after explaining that "[t]he fitness of the parent is not, . . . in issue" in a section 300(d) proceeding (*id.* at p. 878), *Nicole B.* concluded: "[T]here is nothing in the record indicating [the friend] has expressed a willingness not to return and the close association with [the mother] in the past provides a basis for inferring there is a potential he may return. The evidence must be viewed in the light most favorable to the lower court's ruling, and we must indulge in all reasonable inferences to support the findings of the juvenile court [citations]. Accordingly, the lower court's determination the home is unfit based on past acts *indicating his potential return* must be affirmed." (*Id.* at p. 879, italics added.)

The court's focus in *Nicole B.* on the potential return of the mother's friend reflects the principle that the present and continuing unfitness of the home is the fundamental criterion underlying juvenile court intervention under section 300(d). An act or acts of abuse do not in themselves provide a basis for juvenile court jurisdiction. There must be some reason to believe the acts may continue in the future. The facts of *Nicole B.* places it just on the side of the line sufficient to support juvenile court jurisdiction. The present case, in our view, falls on the other side.

We recognize that some of the facts suggested by the deputy district attorney and then "found" by the referee closely track language in the *Nicole B.* opinion: "[T]here is nothing in the record indicating he has expressed a willingness not to return . . . ." (93 Cal.App.3d at p. 879; compare *ante,*

---

[3]Bonnie's arguments on appeal attack the same issue from two different perspectives. In addition to the sufficiency-of-the-evidence contention, she also argues the juvenile referee erred in treating section 300(d) as creating a strict liability concept where the jurisdiction of the juvenile court can be invoked without any finding of fault on the part of the custodial parent. We have no trouble rejecting this aspect of Bonnie's argument. Section 300(d) embodies a strict liability concept in the sense the court's assumption of jurisdiction is appropriate whenever the juvenile's home is presently unfit, regardless of whether the unfitness is due to the fault of the parent(s) or some other reason. "The court's involvement in wardship matters is not necessarily based on a parent's wrongdoing. It is the welfare of the child which is of paramount concern [citations]." (*In re Nicole B., supra,* 93 Cal.App.3d at p. 879.)

p. 325.) This "fact," or perhaps what is better termed the lack of a fact, takes on quite different significance in the context of the two cases. While it is true in *Nicole B.* the friend no longer resided with the mother, there was no indication that the mother asked him to leave or desired that he not return.

Here Dennis did not reside with Bonnie at the time of the molestations. She had divorced him two years earlier. The molestations away from Bonnie's residence occurred during Jennifer's court-ordered periodic visitations with her father. When evidence of the molestation came to light, Bonnie immediately took steps to prevent Dennis from having any contact with Jennifer including pursuing the criminal action against her ex-husband, obtaining a temporary restraining order forbidding any contact and seeking to modify the divorce decree to give her exclusive custody over Jennifer.

The referee in announcing his decision and the Department on appeal emphasized the need of the juvenile court to "protect the child," suggesting there was no way of knowing what the final outcome of the criminal and change-of-custody actions would be. While this may be true, we can hardly presume the domestic court would require or allow father-daughter contact where it would be detrimental to Jennifer's welfare. We are also disturbed by what appears to be the Department's tunnel vision and lack of confidence in superior courts other than the juvenile court.

We have interpreted the Department's appellate brief and statements at oral argument to mean it believes it can remain uninformed on the status of other legal proceedings affecting the parties. We would have thought the Department understood it is unable to properly perform its function when it remains in bureaucratic isolation. The Department's attitude is particularly confusing since the district attorney's office was actively involved in prosecuting Dennis at the same time it was representing the Department before the juvenile court.

We have no doubt the Department pursued the jurisdictional petition even after Bonnie withdrew her request for help out of genuine concern for Jennifer's welfare. We further recognize the Department's proposed supervisory involvement is minimal and that there is no concern that Jennifer will be removed from Bonnie's custody. But our system, for better or for worse, presumes that parents are the best judges of their children's best interests. We respect Bonnie's desire for some semblance of normality for Jennifer as soon as possible, free from the observations and queries of the Department's well-meaning employees.

## DISPOSITION

Order reversed.

Staniforth, Acting P. J., and Work, J., concurred.